CRAIN, Judge.
This is an appeal from a decision by the State Civil Service Commission upholding appellant’s termination.
FACTS
Paul D. Brumfield was promoted from Accountant II to Accountant III on January 3, 1983. As the Federal Grants Accountant for the Department of Transportation and Development (DOTD), Brum-field’s primary duties were to pay the bills submitted; obtain reimbursement for those bills from the appropriate federal grant; and maintain and provide financial records and statements in support of those expenditures.
By memorandum date,d October 19, 1983, to Jerry Jones, DOTD Financial Services Administrator, Sharon L. Penney, Grants Administrator, expressed her concern that the timeliness and quality of the work of the grants accounting section had “deteriorated to a marked degree.” As a result of this memorandum, Jones assigned Jo Ann Felder (the former Grants Accountant)to determine the status of the grants accounting section. Felder discovered evidence of Brumfield’s failure to follow prescribed accounting procedures. Brumfield was terminated on November 17, 1983. After a hearing before a referee, the Civil Service Commission (Commission) upheld Brumfield’s termination. From this ruling Brumfield appeals alleging four assignments of error.
FINDINGS OF FACT AND CONCLUSIONS OF LAW
In the first, second, and third assignments of error appellant alleges that the Commission’s findings of fact and conclusions of law are clearly erroneous; the termination was without cause; and Brum- *155 field’s conduct did not impair the efficiency of the DOTD.
The following findings of fact were made by the referee and adopted by the Commission:
1. The parties stipulated that the April 4, 1983 memorandum to appellant from Jerry D. Jones was not a disciplinary action. This memorandum states that appellant was given an unspecified assignment approximately two months before, that appellant was told on March 28,1983 that the deadline for that assignment would be March 31, 1983 and that the deadline had been extended until 4:15 p.m. on April 4, 1983, because appellant did not meet the March 31,1983 deadline. The letter further states that any other instances or altercations with appellant’s supervisors about his work would result in disciplinary action.
2. By letter dated July 11, 1983, appellant was suspended for eight hours on July 12, 1983, because appellant refused to communicate with his supervisors, repeatedly answered “I don’t know” to questions, had answered questions from the supervisors in a disrespectful manner and had not followed Mr. Sanford’s instructions and had wasted considerable time and effort.
3. In January, 1983, appellant was promoted to the Accountant III position and was trained concerning all aspects of his duties for three to four weeks by the previous incumbent. During his training, appellant tapped his pencil, failed to pay attention, appeared to be disinterested, asked few questions and took only sketchy notes, notwithstanding the fact that he had been instructed to take detailed notes.
4. As an Accountant III, appellant was responsible for the federal grants area, which consisted of approximately one hundred and sixty grants, each of which could include a number of state projects. During the time he occupied the Accountant III position, the federal grants for which appellant was responsible totaled approximately sixty-six million dollars.
5. Appellant’s duties included receiving invoices and verifying the information thereon, processing approximately ten to twenty-five invoices for payment per day, checking the balances of each grant, preparing letters of credit, billing federal grants and preparing quarterly reports on each grant.
6. The last date on which appellant posted project costs are as follows:
PROJECT NO. POSTING DATE
700-15-94 1/31/83
700-16-04 1/31/83
700-16-07 1/31/83
736-07-07 1/31/83
736-07-25 1/31/83
736-08-11 1/31/83
These last postings by appellant were done in connection with his on the job training for his new position. Appellant should have continued to post these projects on a monthly basis, and failed to do so for the months of February through October, 1983.
7. On Federal Railroad Administration Project No. PR-LA-81, appellant made certain payments by voucher number fifty-three dated January 21, 1983. Included in that same billing voucher was a payment made on FRA Project No. LRSA-LA-82(01), for which payment was made on January 17, 1983. Appellant, however, posted the date of the payment on Project No. PR-LA-81 as January 11, 1983 on the grant control ledger sheet and posted that same date on the letter of credit draw down ledger sheet for voucher number fifty-three.
The draw down sheets were used as a handy reference, which allowed information to be obtained with little or no research. The posting by appellant of these wrong dates gave the appearance that monies were drawn down before they were spent, which is illegal.
8. Appellant paid two standard state invoices for Project No. PL-7-LA-01 on April 6, 1983, in the total amount of $3,608.08 and paid a standard state invoice for Project No. LRSA-LA-82(01) *156 on April 7, 1983 in the amount of $3,344.29. These invoices were drawn against a letter of credit by voucher number fifty-eight, dated May 9, 1983.
Appellant had been instructed to draw down invoices against letters of credit when the invoices totalled five thousand dollars.
9. Appellant paid two standard state invoices for Project No. PR-LA-81, one invoice being paid on March 24, 1983, in the amount of $56,370.00 and the other being paid on April 7, 1983, in the amount of $14,624.00. These invoices were drawn against a letter of credit by voucher number fifty-nine, dated May 13, 1983.
10. Appellant paid two state invoices on March 15, 1983 and two state invoices on March 25,1983 on Project No. LA-03-0024, totalling at least $1,293,324.81. These invoices were drawn against a letter of credit by document number eighty-six on April 26, 1983.
Appellant’s failure to timely draw down the amounts referred to in Findings of Fact numbers 7, 8 and 9 caused a loss of interest on these amounts for the period of time during which appellant failed to draw down these amounts, and could have caused a loss of each letter of credit.
11. In voucher number fifty-six, dated March 3, 1983, for Project Nos. PL-LA-80, PR-LA-80(01) and PR-LA-81, a total of $4,121.85 was billed to the federal government. The federal share of these projects was only $3,297.49, which is the amount that should have been billed.
The state incorrectly received both the state and federal shares, which could have resulted in the loss of the letter of credit.
12. In request for payment on letter of credit number eighty-four, dated March 3, 1983, for Project Nos. LA-09-8004, LA-09-0887, LA-09-8008, LA-16-0004, LA-16-0005 and LA-16-0007, a total of $7,621.70 was billed to the federal government. The federal share of these projects was only $6,097.37, which is the amount that should have been billed to the federal government.
Three of these over-billed projects were corrected by appellant on June 23, 1983. One additional over-billed project was corrected on November 14, 1983.
13. Two standard state invoices for Project No. LA-19-003 were paid on January 14, 1983 and March 12, 1983 in the respective amounts of $4,553.59 and $14,-548.11. Appellant never billed either of these amounts to the federal agency.
14. On September 2, 1983, by voucher number sixty-two, $1,397.00 was billed to a federal agency. Appellant did not post this amount on the ledger sheet. Because of this, the ledger sheet contains the wrong balance, and appellant should have posted this amount on the ledger sheet before billing.
Appellant’s failure to post this to the ledger sheet causes the appearance of a particular project having more money than it actually has, which could cause others to attempt to spend this money a second time.
15. After vouchers were posted to the recap ledger sheet, those amounts should have been subtracted from the previous balance and the new, lower balance noted. With regard to voucher numbers ninety, ninety-one and ninety-two, appellant added the posted amounts to the previous balance, rather than subtracting those amounts. This caused the ledger recap sheets to reflect incorrect balances. Appellant did this with regard to seventeen individual entries for amounts contained on voucher numbers ninety, ninety-one and ninety-two.
16. On eighteen occasions between February 24, 1983 and September 23, 1983, appellant failed to post DOTD paid-in voucher numbers and FACS. paid-in voucher numbers on the letter of credit recap sheet for Project No. 69-07-0023.
17. Appellant posted an amendment in the amount of $15,533.00 to the letter of credit recap ledger sheet for Project No. 69-07-0023, and failed to post the *157 amendment number, project number or date.
18. The last letter of credit amendment was posted on December 28, 1982. Thereafter, appellant failed to post letter of credit amendment numbers twenty-four (5/17/83), twenty-five (6/10/83), twenty-six (6/17/83) and twenty-seven (7/15/83). The balance of $12,831,936.29 shown on the letter of credit ledger sheet as of October 4, 1983, did not include the four amendments appellant failed to post, and that balance was therefore incorrect.
19. By letter dated March 9, 1983, Sherry Penny, Grants Administrator, requested that transaction notices be issued to revise the functions on certain charges so that they would be reflected in the grants management billing system. This letter was filed, but there was no record indicating that appellant had made any of the entries, which Penny requested. The evidence does not indicate that appellant ever received Ms. Penny’s request.
20. No federal funds were actually drawn before being billed, and no letters of credit were actually lost. Further, no overpayments by the state actually occurred.
21. In late October, 1983, Jerry Jones instructed Jo Ann Felder to investigate the grants area, and appellant was first informed of any specific failings in November, 1983. Prior to this time, appellant had not complained to nor informed his supervisors that he had not been adequately trained, that he did not understand his responsibilities or how to correctly perform his duties, nor that he was unable to handle the amount of work he had been assigned.
22. Appellant was responsible for a large amount of paperwork during the time that he was an Accountant III performing the grants functions. Appellant was not counselled with regard to nor apprised of'any specific failings in his job performance prior to November, 1983. The meetings which appellant’s supervisors had with appellant were concerned with generalities and not the specifics of appellant’s duties or any specific failings by appellant.
A reviewing court should not disturb the factual findings made by the Commission unless manifestly erroneous. Walters v. Department of Police of New Orleans, 454 So.2d 106 (La.1984). We have carefully reviewed the record and conclude that the Commission’s findings of fact are overwhelmingly supported by the record and are not clearly wrong. We must next determine whether appellant’s conduct constitutes legal cause for disciplinary action.
Cause for disciplinary action exists where the efficiency of the public service is impaired by the conduct of the employee. Additionally, a real and substantial relation must exist between the employee’s conduct and the impairment of the public service. Albert v. Louisiana State Penitentiary, 396 So.2d 340 (La.App. 1st Cir.1981). Brumfield’s conduct resulted in the loss of interest on state funds and jeopardized the status of the letters of credit and continued federal funding. In some instances appellant failed to obtain federal reimbursement for state expenditures. The evidence presented established that Brumfield’s conduct detrimentally effected the efficient operation of the grants function of DOTD. Consequently, we find that the Commission correctly concluded that there was legal cause to discipline appellant.
PENALTY
In the fourth assignment of error appellant alleges that termination is an excessive and unduly harsh penalty.
The penalty imposed should be commensurate with the dereliction. The Commission’s determination as to the existence of cause for dismissal should not be set aside unless arbitrary, capricious or an abuse of discretion. Walters, 454 So.2d at 113. Upon assuming his new position, Brumfield received three to four weeks of training. By memorandum dated April 4,1983, Jones advised Brumfield to cooperate with his supervisors, do his work and function as an Accountant III. On July 12, 1983, Brum- *158 field was suspended without pay for eight hours due to his alleged lack of communication and cooperation with his supervisors and with employees of the Federal Aid Unit.
Jones testified that he counseled appellant on several occasions in reference to improving his job performance. Appellant complained to be suffering from stress in March, 1983, and was offered the opportunity to accept a voluntary demotion to Accountant II, which he refused. The record is replete with instances in which appellant failed to follow prescribed accounting procedures and to adequately perform his duties. His conduct impeded the efficient operation of the financial services department of DOTD. Fortunately, appellant’s lax accounting practices were detected and corrected in-house, rather than by federal audit, which may have placed DOTD at risk for the receipt of future federal funding.
Although dismissal is the most extreme form of disciplinary action which can be taken against a civil servant, in light of the above discussion we conclude that appellant’s dismissal was not arbitrary, capricious or an abuse of discretion. The decision of the Commission is affirmed. Costs of this appeal are assessed against appellant.
AFFIRMED.